UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

CATHY REINHARDT                                                                CIVIL ACTION

VERSUS                                                                              NO. 07-3126

JACK STRAIN, ET AL.                                                         SECTION "K"(1)

### ORDER AND REASONS

Before the Court is a Motion for Summary Judgment (Rec. Doc. 22) ("Mot."). The motion has been filed on behalf of defendants Sheriff Rodney J. Strain and Deputy Benjamin Sadowski (collectively "Defendants").[1] Plaintiff Cathy Reinhardt has filed an opposition to this motion. (Rec. Doc. 23) ("Opp."). For the following reasons, this Court will deny summary judgment.

### I. FACTS

The following facts are undisputed, unless otherwise noted. In the wake of Hurricane Katrina in August 2005, several members of Plaintiff's family lost their homes. Plaintiff's brother, William Panter, purchased land in the rural part of St. Tammany Parish and placed a mobile home on the property. He allowed his and Plaintiff's aunt and uncle, Harry and Debbie Kappes, to likewise move a mobile home onto the property. Plaintiff's mother, Patricia Panter, resided with the Kappes.

---

[1] Originally named as a defendant was Corporal Linden Raimer who arrested Plaintiff along with Deputy Sadowski. Corporal Raimer, however, died in an accident after the filing of the complaint. Plaintiff voluntarily dismissed all claims against him on September 28, 2007 (Rec. Doc. 7), and did not make any substitution of his heirs as defendants. Mot. at 6.

At some point subsequent, Plaintiff had a falling out with her mother, her aunt, her uncle, and her sister, Sharon Reinhardt.  Plaintiff commenced a proceeding in the 21st Judicial District Court for Tangipahoa Parish to obtain a temporary restraining order, a preliminary injunction, and permanent injunction against those family members.   On March 28, 2006, Plaintiff obtained a temporary restraining order against her mother, aunt, uncle, and sister.  On May 1, 2006, that temporary restraining order was converted to a permanent injunction.  The injunction enjoined those four individuals and any member of their families from contacting Plaintiff in any way.  The injunction reads as follows:

> IT IS ORDERED, ADJUDGED AND DECREED that the temporary restraining orders previously issued are converted to permanent injunctions issued against SHARON REINHARDT, PATRICIA PANTER, HARRY KAPPES AND DEBBIE KAPPES restraining, enjoining and prohibiting them, their families, or any agents acting on their behalf, from in any manner threatening, abusing, harassing or inflicting bodily harm upon CATHY REINHARDT, or having any contact at all with her, and her family, at their residences, their places of business, or wherever they may be found, or going on their property, all with the assistance of the proper law enforcement authority(ies) to facilitate such order, until due proceedings may be had, all without bond.

Mot., Ex. C.  There appears to be no dispute that this permanent injunction was valid and in force at all times relevant here.

At some point in early 2006, Plaintiff's brother William Panter likewise had some dispute with his and Plaintiff's mother, uncle and aunt.  He began to make efforts to have the three individuals move off of his land.  On June 2, 2006, Mr. Panter called Plaintiff, explaining to her that his car was broken and that he needed her to drive him to his property where their relatives resided.  Defendants assert that Mr. Panter sought to evict his relatives from his property.  Mot. at 3.  However, Plaintiff claims that he did not intend to evict them on that date, but rather Mr. Panter planned on selling his property, including his mobile home that was situated on the

2

property. Plaintiff states that their trip to the property was for the purpose of "verify[ing] that [Mr. Panter's] key still opened the mobile home so that his real estate agent could show it to potential buyers." Opp. at 2 (citing Plaintiff's Dep. 31:14-25). The parties agree, however, that Mr. Panter had sought an eviction order in May 2006. Moreover, the parties do not dispute that on at least several occasions prior to June 2, 2006, police officers were called to Mr. Panter's property to respond to domestic disputes between Mr. Panter and his family members residing on his land. (Plaintiff's Dep. 35:19-36:17).

According to Plaintiff, on June 2nd Mr. Panter drove her car, with Plaintiff as a passenger, to his property. (Plaintiff's Dep. 39:10-12). Upon arrival at the Mr. Panter's property, Mr. Panter approached his mobile home and was immediately confronted by Joe Urquhart, a man who had been staying in Panter's mobile home without his permission. Mr. Urquhart began arguing with Mr. Panter. (Plaintiff's Dep. 39:25-40:3). Mr. Panter used his cell phone to call the sheriff's department. (Plaintiff's Dep. 40:14-19). In response to the call, Corporal Linden Raimer and Deputy Ben Sadowski of the St. Tammany Sheriff's Department arrived in separate patrol cars. Upon their arrival, Patricia Panter exited a second mobile home located on Mr. Panter's property and approached the deputies. (Plaintiff's Dep. 41:18-20). This mobile home belonged to Harry Kappes. According to Plaintiff, after the deputies spoke with Patricia Panter, they approached Mr. Panter and Ms. Reinhardt and advised them that they were being arrested. (Plaintiff's Dep. 42:17-20). The police officers told Mr. Panter that he was being arrested for trespassing and Plaintiff was told that she was being arrested for violating her own protective order. (Plaintiff's Dep. 43:6-21). Plaintiff makes no claim that Defendants used unreasonable force in arresting her. (Plaintiff's Depo. 45:2-23). After she was arrested, she was

3

booked and released on her own recognizance.  (Plaintiff's Depo. 61:6-62:11).  Ultimately, all charges against Plaintiff were refused by the District Attorney.  Complaint ¶ 11 ("Compl.") (Rec. Doc. 1).  Plaintiff alleges that, as a result of her false arrest, she was suspended by the New Orleans Police Department, and consequently suffered economic damages from missed pay and unrefunded medical expenses.  (Plaintiff's Depo. 68:25-69:4).

 According to Deputy Benjamin Sadowski, he received a call from the police dispatcher on June 2nd to go to Mr. Panter's land in order to disperse subjects.  (Sadowski Depo. (23:9-24:16).  Sadowski and Corporal Linden Raimer were at a police substation at the time, and they took separate cars to Mr. Panter's property.  (Sadowski Depo. 29:4-24).  Sadowski recalled that the people's emotions were "pretty raised," although he did not recall that anyone was talking loudly.  (Sadowski Depo. 39:12-40:17).  Sadowski stated that, after arriving on the scene, the deputies first spoke with Mr. Panter and the Plaintiff.  (Sadowski Depo. 37:9-37:11).  Plaintiff attempted to explain to Sadowski or Raimer why she and Mr. Panter were at the property.  (Sadowski Depo. 41:25-42:5).  Mr. Panter showed the deputies the unsigned court documents.  He was "adamant" that the documents amounted to a judgment.  (Sadowski Depo. 42:7-15).  Sadowski gave Panter "the benefit of the doubt" and stepped away to call the clerk of the court that issued the documents on a cell phone.  Prior to making the phone call, Patricia Panter, Plaintiff's mother, began speaking with the deputies and gave Sadowski a copy of the protective order that Plaintiff had obtained.  Mrs. Panter claimed that Plaintiff was violating her own protective order by being near Mrs. Panter.  (Sadowski Depo. 46:25-48:17).  Sadowski briefly looked at the order, recognized it to be a court document, and he gave it to Raimer to review.  (Sadowski Depo. 50:8-51:8).  Sadowski then made a phone call to determine if Mr. Panter's

unsigned court documents were a valid judgment for eviction. He spoke with a clerk from Judge Fendleson's office. The clerk explained to Sadowski that the court documents were not yet entered as a judgment. (Sadowski Depo. 42:17-44:23). Sadowski returned to the scene where Raimer had been speaking to Patricia Panter, the Plaintiff's mother. Sadowski relayed the fact that Mr. Panter's judgment of eviction was not valid. Raimer had reviewed the protective order and told Sadowski that it was a valid protective order from the 21st Judicial District Court. Raimer informed Sadowski that they were going to place Mr. Panter under arrest for trespassing and the Plaintiff under arrest for violating the protective order. (Sadowski Depo. 50:12-51:18).

## II. ANALYSIS

Plaintiff has asserted a civil rights claim under 42 U.S.C. § 1983 and false arrest claim under La. Civ. Code § 2315 against Deputy Sadowski. Plaintiff has also asserted a false arrest claim against Sheriff Jack Strain under the theory of *respondeat superior*.[2] Defendants herein seek summary judgment on all claims.

### A. Section 1983 Claim Against Deputy Sadowski

"Summary judgment is appropriate if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." *Connors v. Graves*, 538 F.3d 373, 376

---

[2]Defendants asserted in their motion that no § 1983 claim could be alleged against Sheriff Strain because there was no allegation that he was personally involved in this incident, and no § 1983 claim can be based on *respondeat superior* liability. Mot. at 9. Plaintiff replies that she did not make any § 1983 claim against Sheriff Strain, instead only alleging a state law damages claim.

(5th Cir. 2008). "Ordinarily, on summary judgment, the moving party has the initial burden of establishing that there are no issues of material fact and that it is entitled to judgment in its favor as a matter of law." *Breen v. Texas A&M Univ.*, 485 F.3d 325, 331 (5th Cir. 2007) (citing *Rivera v. Houston Indep. Sch. Dist.*, 349 F.3d 244, 246-47 (5th Cir. 2003)). "If the moving party meets this burden, the burden then shifts to the non-moving party to point to evidence showing than an issue of material fact exists." *Id.* (citing *Rivera*, 349 F.3d at 247). When a defendant invokes qualified immunity, however, "the burden is on the plaintiff to demonstrate the inapplicability of the defense." *McClendon v. City of Columbia*, 305 F.3d 314, 323 (5th Cir. 2002). Nevertheless, "[i]n determining whether summary judgment is appropriate, the courts should view the evidence introduced and all factual inferences from that evidence in the light most favorable to the party opposing the motion and all reasonable doubts about the facts should be resolved in favor of the nonmoving litigant." *Boston Old Colony Ins. Co. v. Tiner Assocs. Inc.*, 288 F.3d 222, 227 (5th Cir. 2002) (cited in *Wallace v. County of Comal*, 400 F.3d 284, 288-89 (5th Cir. 2005)). "The issue of qualified immunity is a question of law, but in certain circumstances where 'there remain disputed issues of material fact relative to immunity, the jury, properly instructed, may decide the question.'" *Mesa v. Prejean*, --- F.3d ----, 2008 WL 4319977, at *2 (5th Cir. Sept. 23, 2008), *quoting Presley v. City of Benbrook*, 4 F.3d 405, 410 (5th Cir. 1993).

    Determining whether a government official is entitled to qualified immunity requires a two step analysis. First, this Court must determine whether, "[t]aken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?" *Saucier v. Katz*, 533 U.S. 194, 201, 121 S.Ct. 2151, 2156, 150 L.Ed.2d 272 (2001). "[I]f a violation could be made out on a favorable view of the parties' submissions,

the next, sequential step is to ask whether the right was clearly established." *Id.* This second step of qualified immunity analysis "must be undertaken in light of the specific context of the case, not as a broad general proposition." Id. "For immunity to apply, the 'actions of the officer must be objectively reasonable under the circumstances, such that a reasonably competent officer would not have known his actions violated then-existing clearly established law.'" *Mesa*, 2008 WL 4319977, at *2 (quoting *Evett v. Deep E. Tex. Reg'l Narcotics Trafficking Task Force,* 330 F.3d 681, 688 (5th Cir. 2003)).

Plaintiff claims that she was arrested without probable cause, resulting in a violation of her civil rights under the Fourth and Fourteenth Amendments to the U.S. Constitution. Compl. ¶ 13. "An arrest is unlawful unless it is supported by probable cause." *Flores v. City of Palacios*, 381 F.3d 391, 402 (5th Cir. 2004). Probable cause to arrest with a warrant exists "when the totality of facts and circumstances within a police officer's knowledge at the moment of his arrest are sufficient for a reasonable person to conclude that the suspect had committed, or was in the process of committing, an offense." *United States v. Zavala*, 541 F.3d 562, 575 (5th Cir. 2008) (quoting *United States v. Castro*, 166 F.3d 728, 733 (5th Cir. 1999) (en banc)). "A mistake reasonably made as to probable cause justifies qualified immunity." *Mesa*, 2008 WL 4319977, at *3 (citing *Tarver v. City of Edna*, 410 F.3d 745, 750 (5th Cir. 2005). The Fifth Circuit has noted that, in evaluating whether an unconstitutional arrest occurred due to lack of probable cause, "the analysis of facts that might not support probable cause to arrest needs to be distinguished from the analysis of whether a reasonable officer would have known that he was violating clearly established law when making an arrest." *Mesa*, 2008 WL 4319977, at *4 (citing *Wren v. Towe*, 130 F.3d 1154, 1160 (5th Cir. 1997)).

In *Mesa v. Prejean*, --- F.3d ----, 2008 WL 4319977, at *1 (5th Cir. Sept. 23, 2008), the Fifth Circuit considered a plaintiff's § 1983 claim based on unlawful arrest without probable cause. The plaintiff had been arrested for criminal trespass after the defendant police officer instructed her to cross a street while he was booking another person. The officer claimed that he had given plaintiff two clear commands to move away as he was completing his arrest, and that she did not leave promptly. *Id.* at *4. Plaintiff, however, claimed that the first order was ambiguous, and that she crossed the street after the second, clear order from the officer. *Id.* The court reversed the district court's grant of summary judgment to the officer based on qualified immunity, finding that "the factual ambiguities regarding what [defendant officer] said and how many times he said it, how quickly [plaintiff] moved, and whether no reasonable officer would have thought he could arrest a person for her failure to move from a sidewalk, make summary judgment inappropriate." *Id.* Similarly, in *Sullivan v. Allred*, No. 08-40064, 2008 WL 4656970, at *1 (5th Cir. Oct. 22, 2008), the Fifth Circuit reversed a grant of summary judgment on qualified immunity grounds where the defendant officer arrested plaintiff after he refused to leave a bar and resisted arrest. The plaintiff, however, asserted that he did not know that the defendant was an officer, and essentially he was arrested for "sitting in another patron's chair and walking away from [the officer]." *Id.* at *3. Accordingly, the Fifth Circuit found disputed issues of fact regarding the existence of probable cause, explaining that this determination is "fact intensive and must be left to a trier of fact." *Id.*

This Court concludes that issues of fact regarding the existence of probable cause preclude summary judgment at this time. Plaintiff was arrested for violating a protective order under La. Rev. Stat. § 14:79. That statute reads in relevant part:

> Violation of protective orders is the willful disobedience of a preliminary or permanent injunction or protective order issued pursuant to R.S. 9:361 et seq., R.S. 9:372, R.S. 46:2131 et seq., R.S. 46:2151, Children's Code Article 1564 et seq., Code of Civil Procedure Articles 3604 and 3607.1, or Code of Criminal Procedure Articles, 327.1, 335.1 and 871.1 after a contradictory court hearing, or the willful disobedience of a temporary restraining order or any ex parte protective order issued pursuant to R.S. 9:361 et seq., R.S. 9:372, R.S. 46:2131 et seq., R.S. 46:2151, criminal stay-away orders as provided for in Code of Criminal Procedure Articles 327.1, and 335.1 Children's Code Article 1564 et seq., or Code of Civil Procedure Articles 3604 and 3607.1, if the defendant has been given notice of the temporary restraining order or ex parte protective order by service of process as required by law.

La. Rev. Stat. § 14:79(A)(1)(a). There is no dispute here that the protective order in question was valid, and indeed it was issued after a court hearing with all parties represented. Mot., Ex. C. The relevant question, therefore, was whether the protective order here required the arrest of Plaintiff. The text of the protective order states that it applied to:

> SHARON REINHARDT, PATRICIA PANTER, HARRY KAPPES AND DEBBIE KAPPES restraining, enjoining and prohibiting them, their families, or any agents acting on their behalf, from in any manner threatening, abusing, harassing or inflicting bodily harm upon CATHY REINHARDT, or having any contact at all with her, and her family, at their residences, their places of business, or wherever they may be found, or going on their property . . . .

Mot., Ex. C. Defendants assert that a reasonable officer would have legitimately interpreted this protective order as reciprocal. However, taking the facts in the light most favorable to Plaintiff, which this Court is bound to do, those facts suggest that Corporal Raimer and Deputy Sadowski did not adequately review this protective order prior to arresting Plaintiff. Plaintiff asserts that when Ms. Panter gave Raimer and Sadowski the protective order that Plaintiff had obtained, the officers did not review that protective order adequately. Plaintiff's facts suggest that the commotion on Mr. Panter's land on July 2nd was not overwhelming or distracting. A reasonable officer in Sadowski and Raimer's position would have read the protective order in its entirety.

*See Phelan v. Vill. of Lyons*, 531 F.3d 484, 488 (7th Cir. 2008) (finding no probable cause for traffic stop where police officer failed to read entirety of police report describing stolen vehicle). Had the officers done so here, they would have reached the conclusion that the protective order did not restrict the Plaintiff. Therefore, under Plaintiff's version of the facts, no probable cause existed to arrest her for violating a protective order.

Where, based upon the Plaintiff's version of the facts, a constitutional violation has occurred, the second step of the qualified immunity analysis is to "analyze whether 'the defendant's actions were objective unreasonable in light of clearly established law at the time of the conduct in question.'" *Hampton Co. Nat. Sur., LLC v. Tunica County, Miss.*, --- F.3d ----, 2008 WL 4274462, at *3 (5th Cir. Sept. 18, 2008) (quoting *Freeman v. Gore*, 483 F.3d 404, 410-11 (5th Cir. 2007)). "To be clearly established for purposes of qualified immunity, the contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Brown v. Miller*, 519 F.3d 231, 236 (5th Cir. 2008) (quoting *Atteberry v. Nocona Gen. Hosp.*, 430 F.3d 245, 256 (5th Cir. 2005)). There appears no dispute that Plaintiff "has a clearly established constitutional right to be free from arrest absent an arrest warrant or probable cause." *Freeman*, 483 F.3d at 411. Therefore, this Court need only determine whether "a reasonable officer would have known" that he was violating that right. *Mesa*, 2008 WL 4319977, at *4.

The Court finds that disputed issues of fact remain that prohibit summary judgment at this time. Under the Plaintiff's version of the facts, the Defendants did not make any effort to review the protective order, which certainly would be the course taken by a reasonable officer before arresting a person for violating such a protective order. However, Sadowski claims that

Raimer had indeed reviewed it, but apparently misunderstood it. Additionally, there appears disputed issues regarding what facts were given to the officers, and the state of commotion that existed at Mr. Panter's property. Such facts could establish that the officers "reasonably but mistakenly" concluded that they had probable cause, which would satisfy the second prong of qualified immunity analysis. *Tarver*, 410 F.3d at 750. These facts are disputed, however, and must be determined by a jury. Therefore, summary judgment on the basis of qualified immunity will be denied to Deputy Sadowski.

### B. State Law False Arrest Claims Against Sheriff Strain and Deputy Sadowski

Plaintiff also asserts a state law claim for false arrest under this Court's supplemental jurisdiction. Plaintiff makes this allegation directly against Deputy Sadowski, and also alleges that Sheriff Strain is liable under a *respondeat superior* theory. Under Louisiana law, a sheriff is the proper party that is vicariously liable for the acts of deputy sheriffs. *Jenkins v. Jefferson Parish Sheriff's Office*, 402 So.2d 669, 671 (La. 1981) ("We conclude that the sheriff is the appropriate governmental entity on which to place responsibility for the torts of a deputy sheriff."). Therefore, if summary judgment for false arrest is denied here as to Deputy Sadowski, it should likewise be denied as to Sheriff Strain.

"Wrongful arrest, or the tort of false imprisonment, occurs when one arrests and restrains another against his will and without statutory authority." *Kennedy v. Sheriff of East Baton Rouge*, 935 So.2d 699, 690 (La. 2006). "The tort of false imprisonment consists of the following two essential elements: (1) detention of the person; and (2) the unlawfulness of the detention." *Id.*; *see Touchton v. Kroger Co.*, 512 So.2d 520, 525 (La. Ct. App. 3d Cir. 1987) ("The cases

clearly state that the elements of a cause of action for false arrest against a police officer include the detention of the plaintiff and the unlawfulness of that detention."). There is no dispute that Plaintiff was detained. Moreover, when viewed in the Plaintiff's favor, the facts show that the detention was unlawful. "An arrest is unlawful when the police officers in question did not have probable cause to make the arrest." *Landry v. Duncan*, 902 So.2d 1098, 1102 (La. Ct. App. 5th Cir. 2005). Much as federal law, in Louisiana "[p]robable cause exists when the facts and circumstances within the arresting officer's knowledge, and of which he has reasonable and trustworthy information, are sufficient to justify a man of average caution in the belief that the person to be arrested has committed or is committing an offense." *Gibson v. State*, 758 So.2d 782, 788 (La. 2000). This opinion, *supra*, has already held that summary judgment is precluded by fact issues regarding whether the officers had probable cause to believe that a crime had occurred when they arrested Plaintiff. Defendants assert that because Corporal Raimer and Deputy Sadowski did not act with malice, they should not be held liable. Notably Defendants' motion does not cite any statutory or case law on this point. The Court has located case law holding that malice is an element of false arrest.[3] *See Jenkins v. Baldwin*, 801 So.2d 485, 496

---

[3]It also appears that Defendants could be basing the requirement of malice on Louisiana statutory immunity for public officers. That statute provides:

> Liability shall not be imposed on public entities or their officers or employees based upon the exercise or performance or the failure to exercise or perform their policymaking or discretionary acts when such acts are within the course and scope of their lawful powers and duties.

La. Rev. Stat. § 9:2798.1(B). The statute has an exception for acts that "constitute criminal, fraudulent, malicious, intentional, willful, outrageous, reckless, or flagrant misconduct." La. Rev. Stat. § 9:2798.1(C)(2). Thus the exception for "malicious" acts could be the basis for a requirement of malice here. However, Louisiana courts reserve this immunity statute for instances "where a policy judgment is made at the ministerial level, not at the operational level."

(La. Ct. App. 4th Cir. 2001) ("Under Louisiana law, the torts of false arrest and malicious prosecution both require malice as an essential element."). However, even if it is an element, that case further explained, "Malice may be inferred from a lack of probable cause, or from a finding that the defendant acted in reckless disregard of the other person's rights." *Id.* Because fact issues remain as to probable cause, the Court finds that fact issues likewise remain regarding malice. The Court moreover hopes that the parties will thoroughly brief this issue prior to the jury receiving being instructed in this case.

### III. CONCLUSION

For the reasons cited herein, accordingly,

**IT IS ORDERED** that Defendants' Motion for Summary Judgment (Rec. Doc. 22) is **DENIED.**

New Orleans, Louisiana, this ___31st___ day of October, 2008.

_____
 **STANWOOD R. DUVAL, JR.
 UNITED STATES DISTRICT JUDGE**

---

*Ducote v. City of Alexandria*, 677 So.2d 1118, 1121-22 (La. Ct. App. 3d Cir. 1996) (denying immunity to patrolmen who responded but granting it to police chief's decision to withdraw as citizens started rioting). The officers here were acting on the operational level when they responded to Mr. Panter's property. Accordingly, regardless of any allegation of malice, the immunity statute of § 9:2798.1 would not apply here.